# Ex Parte Baker.

118  185
143.  582

## *Application for Mandamus.*

1. *Chancery practice; appointment of administrator ad litem.*
   When in a suit in equity which seeks the settlement of an
   administration and incidentally thereto the settlement of a
   partnership of which the intestate was a member, all the heirs
   of the decedent and every person interested in the final set-
   tlement of such estate and its distribution are before the
   court, the statute providing for the appointment of an admin-
   istrator *ad litem*, (Code of 1896, §352; Code of 1886, §2283),
   does not apply and it is unnecessary and erroneous to
   appoint an administrator *ad litem* in such case.

2. *Same; when surviving partner may be compelled to produce
   books of partnership.*—On a bill filed by the heirs of a de-
   ceased partner against a surviving partner, asking for the set-
   tlement of a partnership, the surviving partner, having pos-
   session thereof, can, on motion of the complainants, be com-
   pelled by order of the court to produce the books, papers and
   accounts of the partnership and to place them in the hands
   of the officer of the court for inspection by the other par-
   ties; the rules as to bills of discovery not applying in such
   cases.

This was an original petition for *mandamus* filed in
this court. The facts of the case are sufficiently stated
in the opinion.

WHITSON & GRAHAM and KNOX, BOWIE & DIXON, for
petitioner.—1. There is no statute in Alabama provid-
ing for the production of papers and documents in a
court of chancery. The right is given under the inherent
power of such courts, in the exercise of the jurisdiction,
to compel a discovery, when discovery as sought in the
bill, "is indispensable to justice" as auxiliary to any
proper relief.—*Handley v. Heflin*, 84 Ala. 600; *Wood
v. Hudson*, 96 Ala. 469; *Va. & Ala. Min. & Mfg. Co. v.
Hale*, 93 Ala. 542. A suit in equity for discovery is
either filed for the sole purpose of compelling an an-
swer and disclosures by an answer, or "to disclose and
produce documents, books and other things within the

possession of the defendant.—1 Pomeroy Eq. Juris., p. 228, § 191. The jurisdiction to compel or require the defendant to produce books and papers is a branch of the equitable power to compel a discovery, and the production of such books and papers is auxiliary to the right to compel a discovery in equity and is a part of it, and is governed by the settled rules of chancery practice in respect to discovery.—1 Pomeroy Eq. Juris., p. 259, §205; *Union Pac. R. R. Co. v. Botsford,* 141 U. S. 259; 3 Daniels Chan. Pl. & Pr., §2039; 2 Daniel Chan. Pl. & Pr. (5th ed.), §1817.

2. The right of the plaintiff to compel a production of papers is limited to matters well pleaded in the bill, and it must appear that plaintiff either has a right to the documents themselves or a sufficient interest in inspecting them, "and this right must appear in his bill and cannot regularly be established by collateral proof. 3 Greenl. on Ev., p. 313, §298; 1 Pomeroy Eq. Juris., §§191, 198; 3 Daniel Chan. Pl. & Pr., §2069; Beach on Modern Eq. Practice, §523, note 1, p. 535. The production of documents can only be compelled by the plaintiff in his bill, or by means of a bill; and by the defendant only by filing a cross-bill.—3 Greenl. on Ev., p. 319, §302; 7 Beach on Modern Eq. Pr., §524; 2 Daniel's Chan. Pl. & Pr. (5th ed.), p. 173, §1820; *Bishchoffsheim v. Brown,* 29 Fed. Rep. 341-2.

3. Courts will not compel a defendant rightfully in possession of documents to deliver them into the court in advance of a trial or hearing; and if inspection is prayed for in the bill and the bill presents a proper case, they will only be permitted to be inspected in the defendant's hands. The court will not impound the papers.—*Lester v. People,* (Ill.) 41 Am. State Rep. 375, and note on page 396; *Ely v. Mowry,* 12 R. I. 575; *Hilliard v. Township of Harrison,* 37 N. J. Law, 170-4; *Beckford v. Wildman,* 16 Ves. 438.

The application will be denied where it appears that the applicant might have access to the books or papers without an order.—*Bearns v. Burrus,* 86 Hun, 258; *Lester v. People,* (Ill.), 41 Am. St. Rep. note p. 392; *McAllister v. Pond,* 15 Howard Prac. 299.

4. Under the statute providing for the appointment of an administrator *ad litem,* (Code of 1896, section

352), it is only in case where "the estate of a deceased person must be represented, and there is no executor or administrator, or he is interested adversely thereto," that the court should "appoint an administrator *ad litem* of such estate for the particular proceeding * * * * whenever the facts rendering such appointment necessary shall appear in the record of such cases, or shall be made known by the affidavit of any person interested therein."

Three things must concur to justify the appointment: 1st, that the estate "must be represented"; 2nd, that such administrator shall be appointed for a particular proceeding: and 3d, the necessity for the appointment of such administrator *ad litem* must appear from the record of the case or be shown to the court by the affidavit of a party in interest. In cases where there is a full representation of all the rights and interests involved in the estate, by the presence of the parties in whom these reside, there can be neither necessity nor propriety in the intrusion of an administrator *ad litem.*—*Gayle v. Johnston,* 72 Ala. 254; *Ex parte Lyon,* 60 Ala. 654; *Clark v. Knox,* 70 Ala. 607.

5. The appointment of an administrator *ad litem* is purely statutory. Before the enactment of the statute, there was no such administrator known to our laws, and the appointment of such an administrator was nugatory, conferring no rights to represent the deceased.—*McCall v. McCurdy,* 69 Ala. 73. As heretofore stated, the statute provides for his appointment, only when the estate of a deceased person "must be represented" in a particular proceeding in the cause, and when it clearly appears that his appointment is necessary. In this case there is shown no such necessity, and the parties interested in the estate were all before the court.—*Lane v. Westmoreland,* 79 Ala. 372; *Miller v. Irby,* 63 Ala. 482; *Trimble v. Fariss,* 78 Ala. 260; *Dooley v. Villalonga,* 61 Ala. 129; *Wells v. Amer. Mortg. Co.,* 109 Ala. 437; *Moore v. Alexander,* 81 Ala. 509; *Gayle v. Johnston,* 72 Ala. 258.

BROWNE & DRYER, *contra.*—In this suit the settlement of an administrator in chief as surviving partner was adverse to the estate, and it was, therefore neces-

sary that there should be an administrator *ad litem* appointed as provided by the statute.—*Ex parte Lyon*, 60 Ala. 650; *Sullivan v. Lawler*, 72 Ala. 68; *Clark v. Knox*, 70 Ala. 607; *Teague v. Corbitt*, 57 Ala. 537; Code of 1896, § 352.

In the case of the settlement of a partnership, the rule as to the right to compel the production of books and other documentary evidence is different from what it is in other cases. In such case, upon the application of either party, and in any stage of the suit, the adverse party will be compelled to deposit the partnership books and papers, which are in his possession or under his control, in the hands of an officer of the court for the inspection of the party making such application; and that such party may take copies thereof, if necessary.—*Kelly v. Eckford*, 5 Paige (N. Y.) 548; *Reid v. Coleman*, 4 Tyrwhitts Rep. 274; *Livingston v. Curtis*, 12 Hun (N. Y.) 121; *Stebbins v. Harmon*, 17 Hun 445.

HARALSON, J.—1. This is an application to this court for *mandamus* by James W. Baker, to require the judge of the city court of Talladega, sitting in equity, to vacate an order appointing an administrator *ad litem* for the estate of William Baker, deceased, on the settlement of the accounts of the partnership of William Baker & Son, composed of the deceased and said James W. Baker, and the order requiring the latter to produce in court the books and papers of the partnership in his custody to be used on the settlement of the partnership accounts between the partners.

The administration of the estate of William Baker, deceased, by James W. Baker, his son, was begun in the probate court of Talladega county. On a bill filed by some of the heirs against said James W. Baker, individually and as administrator of said estate, and other interested parties, the further administration of said estate was removed into the city court of Talladega, a court of equity, where the same is now pending. Among other things, it was alleged in the bill, that a partnership in the mercantile business existed, at the time of and previous to the death of said William Baker, between him and said James W. Baker, which

was unsettled, and that a settlement thereof was necessary for the due and proper administration of the estate of said William Baker. It also alleged, that the settlement of said estate involved the settlement with the said James W. Baker of many transactions of his individual liability to said estate, wherein his personal interests were antagonistic and hostile to that of the estate; and besides the prayer for the settlement of said estate in said court, the complainants also added a proper prayer for the settlement of said partnership between the deceased and said James W. Baker, and for the appointment of an administrator *ad litem* for said estate, to represent it in those matters wherein the interest of said Baker was antagonistic and hostile to that of said estate.

There was no dispute as to the fact, that as to the unsettled partnership accounts between respondent and said William Baker, the interest of respondent was antagonistic to that of said estate. The Code of 1896, section 352, (Code of 1886, §2283) provides that "When, in any proceeding in the probate or chancery court, or other court having chancery jurisdiction, the estate of a deceased person must be represented, and there is no executor or administrator of such estate, or he is interested adversely thereto, it shall be the duty of the court to appoint an administrator *ad litem* of such estate for the particular proceeding, without bond, whenever the facts rendering such appointment necessary shall appear in the record of such case, or shall be made known to the court by the affidavit of any person interested therein," etc.

The provisions of this statute are of modern origin. The first act on the subject was enacted November 27th, 1863, and related to proceedings alone in the probate court. It was carried into the Code of 1867 as section 1998. On March 17, 1875, this section was amended as it appears in its present form, appearing in the Code of 1876, as section 2625, and afterwards into the Codes of 1886 and 1896.

The design of this statute, as originally adopted, was to confer on the probate court jurisdiction to make settlements of administrations where the difficulty mentioned in the statute existed, and where, with-

out the statute, that court in such cases was without authority to proceed, rendering it necessary to resort to a chancery court. The last named court, before the adoption of any statute on the subject, of its own inherent powers, had jurisdiction to make settlements of estates in such cases. In *Gayle v. Johnston*, 72 Ala. 258, in construction of this statute, this court said: "Such an appointment is necessary or proper—is contemplated by the statute—only when there is no legal representation of the estate, or the legal representative has an adverse interest. In cases where there is a full representation of all the rights and interests involved in the estate, by the presence of the parties in whom these reside, there can be neither necessity nor propriety in the intrusion of an administrator *ad litem*. The personal representative, in a proceeding of this character (an application by an administrator to sell lands for the payment of debts), whether he be a creditor or not, stands in an adversary relation to the heirs or devisees. The interests of the estate he represents are the interest of creditors. The heirs or devisees must be before the court in the attitude of defendants, having full opportunity to protect their rights."

The original bill in this case was filed as appears by Ella Mitchell and Susan Trent, children and heirs at law of William Baker, deceased, against James W. Baker, individually and as administrator of said William Baker, and against the widow and the children and heirs at law of said deceased. It thus appears that every person interested in the final settlement of said estate and its distribution, and to whom the residue after paying the debts, if any, would go, and for which decrees in their favor would be rendered by the court, were before the court, interested adversely to the administrator, to see that he was allowed no improper credit, whether on the settlement of the estate or the partnership between their intestate and his administrator in chief and surviving partner.—Code of 1896, §229. What duty or function the administrator *ad litem* could perform, with the heirs of the deceased before the court as complainants or defendants, with full opportunity to protect their rights as well, and perhaps better than the administrator *ad litem* could do,

does not appear.  An administrator *ad litem* should not be appointed in the chancery court, in any event, when the court is competent to render complete justice without incurring the unnecessary, and often very considerable, expense to the estate by such an appointment.  It does not appear that there was any necessity for the appointment of such an administrator in this case.

2. The only remaining question relates to the alleged error of the court in ordering the books of the partnership to be produced by the administrator for the inspection and examination of the complainants in the original bill, made defendants to the cross-bill.  The answer as a cross-bill was filed on the 8th of August, 1896.  On the 27th May, 1897, the complainants in the original bill, and the administrator *ad litem,* filed separately their petition in court for an order requiring James W. Baker, as surviving partner of Wm. Baker & Son, who it was alleged had the custody and control thereof, to bring and deposit with the register of the court the books and papers of said firm, to the end, that the same might be accessible to the parties praying for such order, to be used by them in any reference or proceeding in court, of and concerning a settlement of said partnership.  Of this application, the defendant had due and legal notice, and by demurrer and otherwise contested the granting of the same.

At the June term, 1897, of said court, the cause was submitted for decree on the motion for the production of books, and the court in term time rendered its decree—to quote its language—ordering that "James W. Baker, surviving partner of the late firm of Wm. Baker & Son, composed of William Baker, now deceased, and the respondent, deliver to J. W. Vandiver, register of this court, within five days, the books, accounts, notes, memoranda and all other papers appertaining to the business of the late partnership of which he is surviving partner, to be held by him for inspection of the complainants, [and] said C. W. Stringer, Admr. *ad litem,* or either of them or their solicitors of record, provided, however, that he give notice to the respondent, or his solicitors of record, of such intended inspection, that he or they or either of them may be

present, if thought advisable to be there. The register will retain possession of such books, papers, etc., sixty days from the date they are received by him, and at the end of sixty days he will return them to the respondent. The register will exercise extreme caution and diligence for the preservation of the said books, papers, etc., while in his possession."

The grounds upon which this motion was resisted were in substance, that movants had not shown that they had requested or demanded of defendant, an inspection and examination of said books and papers, and such demand had been refused; that it was not shown, that said books, etc., constitute material evidence for the complainants or the administrator *ad litem,* and that they were necessary for the purpose of the suit; that the administrator *ad litem* was without authority of law to require or seek discovery against defendant; that movants had no right of inspection of said books, etc., except while they remained in the custody and control of defendant; that by said motion the movants seek to obtain a discovery in aid of the relief prayed for in their bill, and such discovery could only be had when sought by original bill of complaint, and that the affidavit attached to motion as amended was insufficient, for having been made by one of the solicitors of movants.

It was shown by the answer to said motion, that about two weeks before the filing of the same, movants requested of defendant an inspection of said books and papers, and defendant offered to allow the complainants in the original bill, Ella Mitchell and Sue Trent, and their attorneys, to examine and inspect said books and papers, the defendant to be allowed to retain the custody of the same, and he or his attorneys to be present on such examination, and to allow a reasonable time for such inspection and examination, but refused to allow said administrator *ad litem* to examine and inspect said books, etc. Other grounds of objection were also urged, but it is unnecessary to go to the length of setting them all out.

Counsel for the petitioner for *mandamus* indulge much argument and cite many authorities to show, that the movants were required to seek an inspection

of these books and papers, by bill of discovery, or if not, in their motion for an inspection of the same, to have brought themselves, in their averments, within the rigid requirements for a proper bill for discovery. They say, "There is no statute in Alabama providing for the production of books and documents in a court of chancery. The right is given under the inherent powers of such courts, in the exercise of the jurisdiction to compel a discovery, when discovery is shown in the bill, 'is indispensable to justice' as auxiliary to any proper relief." But the rules applicable to and necessary to be observed in the filing of a bill of discovery are not controlling on a motion to produce partnership books needed in settlement of partnership accounts between partners.

The general rule is, that a court will not order the production of books to be used as evidence against the party to whom they belong. At law, the failure of a party to produce his books and papers on notice to do so, authorizes the introduction of secondary evidence of their contents, but the court will not order their production.—*County of Dallas v. Timberlake,* 54 Ala. 411;*Golden v. Conner,* 89 Ala. 598; *Kelly v. Eckford,* 5 Paige, 548; 1 Taylor's Ev. 138. But the rule is different in equity.—*Smith v. Collins,* 94 Ala. 394, 406.

Mr. Greenleaf, touching the power of a court of chancery to require the production of books and papers, lays down the rules as applicable to a bill of discovery, and considering some of the exceptions to these general rules, says: "In case of partnership, however, where the controversy is between the partners and their representatives, the party having possession of partnership books and papers will be ordered on motion, and in any stage of the suit, to place them in the hands of an officer of the court, for inspection of the other party, and that he may take copies if necessary."—3 Greenl. Ev., §303.

Discussing the same subject, Chancellor WALWORTH, in *Kelly v. Eckford,* 5 Paige, *supra,* uses this language: "This principle of requiring the defendant to file a cross-bill of discovery only applies, however, to those cases in which the defendant wants the inspection of the complainant's documentary evidence to enable him

13

to put in his answer, or to make out his defense to the suit. But it is not applicable to the case of partnership books and papers, in the hands of one of the partners, or his assignees or representatives, where both parties have an equal right to the examination and inspection thereof for the purposes of the suit. In such cases, it is the constant and uniform practice of this court, upon the application of either party, and in any stage of the suit, to order the adverse party to deposit any of the partnership books and papers, which belong equally to both, in the hands of an officer of the court for the examination and inspection of the adverse party, and to permit copies thereof to be taken by the several partners or their representatives." This rule, amply sustained by the decisions of other courts and text writers, seems to be consonant with reason and justice.—2 Lindley on Part., *404, 504; Bates on Law of Part., §314; 2 Ib., §716; 6 Encyc. of Pl. & Pr., 785-6, and decisions referred to.

For the purposes of an application to produce books and documents as here made, it will be assumed that the plaintiff's case as made is true, for as has been well stated, if the court should wait until the fate of the litigation is known, that would be equivalent to refusing production.—3 Greenl. Ev. §298; *Gresley v. Mousley,* 2 Kay & J. 288; *Mansell v. Feeney,* 2 Johns. & H. 320.

The application in this case, as has appeared, was against said James W. Baker, as surviving partner, to produce the books and papers of the firm, for inspection of movants in and about the settlement of said partnership affairs between him and his deceased partner.

The order of the court was guarded and conservative, transcending in no particular its authority. It seems to have been dictated by as careful a regard for the rights of the defendant, as for those of the movants.

None of the grounds set up against the granting of this order, appear to be meritorious.

Application for *mandamus* granted as to the order appointing the administrator *ad litem,* and denied as to the order producing the partnership books.