# Steverson *v.* Agee & Company

*Assumpsit.*

(Decided November 18, 1913.  63 South. 794.)

1. *Set-Off and Counter Claim; Subject Matter; Unliquidated Damages.*—In an action on an account, a defendant could, under section 5858, Code 1907, set off the value of lumber purchased by plaintiff from a third person, if defendant had either the legal or equitable title to, or an equitable lien on, such lumber, entitling him to maintain an action of trover or case.

[Steverson v. Agee & Company.]

*2. Action; Nature; Trespass or Trover.*—Where one has the legal title to personal property purchased by another from a third person, he is entitled to maintain trover, but if he had only an equitable lien or title, his right of action would be in trespass on the case.

*3. Same; Trover and Conversion; Title to Support.*—A person who paid the owner of land the purchase price for timber rights thereon, and was placed in such possession of the same as the property in its then condition was capable or susceptible of, had such an equitable title to the timber as would support an action of trespass on the case for its conversion, or waiving the tort, for money had and received, although he had received no deed to the same.

*4. Acknowledgment; Contents; For Corporation.*—Since the adoption of section 3361, Code 1907, an acknowledgment for a corporation, to be valid must comply substantially, though not literally, with the form there prescribed.

*5. Same; Mode of Taking; Appearance.*—Where the certificate of acknowledgment to a deed when made was not in proper form, an additional certificate in proper form, subsequently made, is invalid, unless there was a re-appearance and re-acknowledgment of the grantor before the certifying officer.

*6. Same; Operation and Effect; Evidence.*—Under section 3374, Code 1907, where the certificate of acknowledgment to a deed when made was not in proper form, a new certificate subsequently made in proper form did not make the deed self-proving where the deed was not again recorded after the new certificate was placed thereon.

*7. Estoppel; After Acquired Title.*—Where a mortgage on timber executed by a person having no title contained a warranty of title, a title subsequently acquired by such mortgagor inured to the benefit of the mortgagee, and vested in him, as from the time of the execution of the mortgage.

*8. Same; Evidence; Proof of Title.*—Where the action was by a mortgagee of timber for the value of lumber purchased by the defendant from the mortgagor, proof of title to the timber in either the mortgagee or the mortgagor was unnecessary, as the purchaser was estopped to deny the title of the vendor mortgagor, and the mortgagor's title, if any he had, inured to the mortgagee under the warranty in the mortgage.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by W. C. Agee & Co. against J. M. Steverson. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

The certificate of acknowledgment referred to in the opinion is as follows: "I, A. A. Campbell, a notary public in and for New York county, state of New York,

hereby certify that John T. Atterbury, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that being informed of the contents of the conveyance, he, as vice-president of the Alabama Mineral Land Company executed the same in the name, and in behalf of said corporation, and affixed the corporate seal thereto voluntarily on the day the same bears date. Given under my hand and official seal this 26th day of August, 1909. A. A. Campbell, Notary Public, New York County, New York. [Seal.]"

RIDDLE, ELLIS, RIDDLE & PRUET, for appellant. The mortgage was binding.—*Burns v. Campbell*, 71 Ala. 288. Even where a party has a beneficial interest in land and no legal title, a valid mortgage can be made by such party on such lands.—*Swann & Billups v. Gaston*, 87 Ala. 569. We therefore respectfully submit that the court erred in excluding the mortgage from evidence, and in excluding the deed.

P. O. STEVENS, and J. W. NOLEN, for appellee. No brief reached the Reporter.

THOMAS, J.—The appellant, Steverson, was sued by the appellees, Agee & Co., on an account, and there was judgment against him, from which he appeals.

On the trial he did not dispute the correctness of the account or his liability therefor, but sought to defeat a recovery only by attempting to show a set-off against the plaintiff, under a plea of set-off, duly filed, in code form, for an unliquidated demand and for money had and received. The evidence which the defendant offered in support of this plea of set-off was excluded by the court, or rather not allowed by it to be introduced,

and it gave the affirmative charge in favor of the plaintiffs.

This evidence tended to show that the Alabama Mineral Land Company, a corporation with headquarters in New York, but with a local office in Anniston, Ala., in charge of one Davis, was, on and prior to August 23, 1909, in possession of and claiming to own certain lands in Shelby county, Ala.; that one Paul Rich, a sawmill man, besought the defendant at the latter's home in Alexander City, Tallapoosa county, Ala., to loan him (Rich) the money with which to buy the timber rights on this land, whereupon, the two on the day above named went up to Anniston to see Davis, the local agent there of the land company, about the purchase, and closed a trade with him for the timber rights. He was without authority, however, to execute a formal deed, but it was agreed that he was to at once prepare and send on to New York, for the company to execute, a deed from it to Steverson (defendant here) to the timber rights to the lands, which was to be delivered upon the payment by the latter of the agreed purchase price. That night Steverson and Rich returned to Alexander City, and the next morning Rich, in pursuance of the previous agreement between him and Steverson, to the effect that Steverson was buying the timber rights on the land for him (Rich), executed to Steverson, in order to get Steverson to advance the purchase money for the timber rights, as well as to procure from Steverson an additional loan, a mortgage to the timber rights on said lands, as well as on the lumber output of his sawmills and to certain other personal property. Upon the execution of this mortgage by Rich to him (Steverson), the latter on that day, August 24, 1909, sent off the purchase money, $1,200, to the Alabama Mineral Land Company, or to their agent, and turned over to Rich the

[Steverson v. Agee & Company.]

$500 additional loan, making a mortgage debt of $1,700, as recited therein. The agreement was that Rich was to take immediate possession of the timber rights on the land and cut and manufacture the timber into lumber and deliver it to Steverson until the mortgage debt was paid, and that so soon as Steverson received his deed from the land company, he would execute one to Rich to the timber rights on the land, and forward to him. A few days later Steverson received such a deed. It bears date of August 26, 1909, and Steverson, upon its receipt, executed and forwarded by mail to Rich a deed as promised; but it appears that it was never in fact received by the latter, and hence it was ineffectual as a deed, for want of delivery. At any rate, however, Rich took possession of the timber rights, claiming to own them, under this purchase from Steverson, and proceeded to cut and manufacture the timber into lumber at his sawmill, several cars of which the plaintiffs here (Agee & Co.) bought from him without the knowledge or consent of defendant, Steverson, but with presumptive knowledge on their part of his lien or title, since his mortgage mentioned and his deed mentioned were on record at the time in Shelby county, having been recorded there two days after their respective execution. It is the value of these cars of lumber so purchased by the plaintiffs that the defendant, Steverson, whose mortgage against Rich is still unsatisfied in whole or in part, seeks to offset against plaintiffs' account asserted in this suit.

If the facts stated would sustain in the defendant, Steverson, either an action of trover or trespass on the case, on suit brought by him against the plaintiffs, Agee & Co., they are available as a set-off under the pleas filed in this suit.—Code, § 5858, and authorities there cited; Code, § 5382, form 27. If he had the legal title to the

lumber at the time of the conversion by the plaintiffs, the right of action would be trover; and if he had only an equitable lien or title, it would be trespass on the case. The real question is: Did the facts which the defendant offered to prove show either sort of title or lien in him. The plaintiffs contend that they do not, and we will separately examine and dispose of their several contentions as to why they do not, as made by them in their objections in the lower court to the evidence when offered, since they have filed no brief here.

An objection was made by the plaintiffs to the introduction in evidence of the deed from the Alabama Mineral Land Company to the defendant, Steverson, on the ground that it was not self-proving and its execution had not been proved. The court sustained the objection. The conveyance is under a seal, purporting to be that of the corporation, and the testimonial clause reads as follows: "In testimony whereof, the said Alabama Mineral Land Company has caused its corporate name to be hereunto signed, and its corporate seal to be affixed by its vice president on August 26, 1909." This is followed by the corporate seal, opposite which is written: "Alabama Mineral Land Co., by J. T. Atterbury, Vice-President." Then follows a certificate of acknowledgment (which the reporter will set out) under the hand and official seal of A. A. Campbell, notary public of New York, N. Y., certifying the appearance before him of J. T. Atterbury, vice-president of the Alabama Mineral Land Company, and his acknowledgment, in the form as will be set out, of the execution of the deed for and in behalf of the corporation and under its corporate seal. Undoubtedly this form of acknowledgment would have been sufficient if it had been employed prior to the adoption of the Code of 1907, since, until then, no special form of acknowledgment having

been prescribed by statute for corporations, it was held
that an acknowledgment for a corporation which con-
tained every substantial statement of the general form
prescribed for individuals was sufficient.—*Jinwright v.
Nelson,* 105 Ala. 403, 17 South. 91. In section 3361 of
that Code, however, the Legislature for the first time
established a separate form of acknowledgment for cor-
porations, and an acknowledgment for a corporation
made subsequent to that date, as the one here, must, in
order to be valid, comply substantially, though not lit-
erally, with this new special form.—*Middlebrooks v.
Stephens,* 148 Ala. 230, 41 South. 735; *Leech v. Kar-
thaus,* 141 Ala. 515, 37 South. 696; *Homer v. Schonfeld,*
84 Ala. 313, 4 South. 105; *Sharpe v. Orme,* 61 Ala. 263;
*Lucas v. Boyd,* 156 Ala. 430, 47 South. 209; *Frederick v.
Wilcox,* 119 Ala. 355, 24 South. 582, 72 Am. St. Rep.
925; *Gates v. Hester,* 81 Ala. 357, 1 South. 848. Com-
paring that form with the one here employed, it will be
observed that the latter contains every material state-
ment of the former, except that the latter fails to state,
as the former does, that the acknowledging officer ac-
knowledged that he had authority to execute the deed
for the corporation. It does state, however, that such
officer acknowledged that he affixed the corporate seal
to the deed. But is this the equivalent of an acknowl-
edgment on his part that he had authority to execute
the deed? It may be that it is, in view of the fact that
it is settled that an officer's authority to execute a deed
for the corporation is presumed from his affixing the
corporate seal thereto (*Jinwright v. Nelson, supra*),
yet, we do not deem it necessary to the disposition of
the case to decide this question, and therefore decline
to do so.

In an attempt to cure this defect (if such it was) in
the first acknowledgment, some months later an addi-

tional certificate, made literally in the code form mentioned, was placed on the deed; but it was invalid as such, unless there was a reappearance and a reacknowledgment of the grantor before the certifying officer (*Griffth v. Ventress,* 91 Ala. 375, 8 South. 312, 11 L. R. A. 193, 24 Am. St. Rep. 918) ; and, even then, would not make the deed self-proving unless it (the deed) was again recorded after this new certificate of acknowledgment was placed upon it, which does not appear to have been done (Code, § 3374).

While these considerations eliminate the deed offered in evidence from the Alabama Mineral Land Company to the defendant, Steverson, of the timber rights on the land, and while a formal deed from it to him of such rights was essential to convey to him the legal title thereto, and while a like one from him to his mortgagor Rich (which appears never to have been delivered, and therefore to have been ineffectual as such) was necessary to vest in the latter such title (*Heflin v. Bingham,* 56 Ala. 566, 28 Am. Rep. 776; *Zimmerman v. Duffin,* 149 Ala. 389, 42 South. 858, 9 L. R. A. [N. S.] 663, 123 Am. St. Rep. 58; but see in connection 28 Am. & Eng. Ency. Law, 54; *Foster v. Mabe,* 4 Ala. 402, 37 Am. Dec. 749; *Scroggin v. Slater,* 22 Ala. 688; *Harris v. Powers,* 57 Ala. 139; *Vann v. Lunsford,* 91 Ala. 583, 8 South. 719; *Miller v. Griffin,* 102 Ala. 615, 15 South. 238; *Chalifoux v. Potter,* 113 Ala. 219, 21 South. 322; *Broaddus v. Smith,* 121 Ala. 338, 26 South. 34, 77 Am. St. Rep. 61; *Finney v. Lucy* [Sup.] 39 South. 583; *Rothschild v. Bay City Lumber Co.,* 139 Ala. 576, 36 South. 785; and *Gulf Red Cedar Co. v. O'Neal,* 131 Ala. 135, 30 South. 466, 90 Am. St. Rep. 22), yet, excluding from consideration these two deeds, there was still sufficient evidence offered by the defendant to sustain, if believed by the jury, his said pleas of set-off, and this upon either of two theories:

In the first place, it appears that the said mortgage from Rich to the defendant contained a warranty. By the operation of this, if Rich, though at the time he executed the mortgage he had no title, subsequently acquired one, it inured to the benefit of Steverson and eo instanti vested in him as from the time of the execution of the mortgage.—Code, § 3421; *Swann v. Gaston,* 87 Ala. 569, 6 South. 386; *Chambers v. Rigstaff,* 69 Ala. 140; *Hargrave v. Melbourne & Troy,* 86 Ala. 270, 5 South. 285; *Prewitt v. Ashford,* 90 Ala. 294, 7 South. 831. The plaintiffs, Agee & Co., as the undisputed evidence shows, became, subsequent to the execution of the mortgage, purchasers of the property from Rich, and are relying on the title they acquired through him. They are therefore estopped from denying that Rich had title.—*Sheats v. Scott,* 133 Ala. 646, 32 South. 573; *Pollard v. Cocke,* 19 Ala. 188; *Lang v. Wilkinson,* 57 Ala. 259; *Cooper v. Watson,* 73 Ala. 252; *Pendley v. Madison,* 83 Ala. 484, 3 South. 618; *Sullivan v. Mc-Laughlin,* 99 Ala. 60, 11 South. 447; *Bernheim v. Horton,* 103 Ala. 380, 15 South. 822. The moment he acquired title, which the plaintiffs, as seen, are held to assert he did acquire in some way and at some time before their purchase from him, that title inured to the benefit of the defendant under his said mortgage, which was in existence prior to the sale by Rich to the plaintiffs.

Second. The payment by Steverson to the Alabama Mineral Land Company of the purchase money for the timber rights on the land, and the placing of him in possession thereof by them or their agent to the extent that the property in its then condition was capable or susceptible of being possessed, conferred on defendant, even though no deed at all was executed, an equitable title to the timber, which would support an action of case for its converson, or, if the tort be waived, for money had

[Kendrick v. Cunningham.]

and received.—*Heflin v. Bingham,* 56 Ala. 566, 28 Am. Rep. 776; *Harris v. Powers,* 57 Ala. 139; *Bank v. Sproull* 105 Ala. 280, 16 South. 879. If Rich acquired defendant's equitable title as a result of the transactions between them, it was conveyed back to defendant by Rich's mortgage; and if Rich did not acquire defendant's equitable title, it of course remained in defendant.

However viewed, therefore, there was ample evidence to support defendant's pleas of set-off, and the court erred in the exclusion of the evidence offered by him. The judgment of the lower court is consequently reversed, and the cause remanded.

Reversed and remanded.